UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BARTON L. SCOTT,                           )
                                           )
          Plaintiff,                       )
                                           )        CIVIL ACTION NO.
VS.                                        )
                                           )        3:11-CV-2094-G
GRAND PRAIRIE INDEPENDENT                  )
SCHOOL DISTRICT, ET AL.,                   )
                                           )
          Defendants.                      )

MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, Grand Prairie Independent

School District ("Grand Prairie ISD") and Ruben Molinar ("Molinar"), to dismiss the

claims asserted against them by the plaintiff, Barton L. Scott ("Scott") (docket entry

16).  For the reasons set forth below, the defendants' motion to dismiss for failure to

state a claim is granted in part and denied in part.

I. BACKGROUND

A. Factual Background

The plaintiff is a middle school teacher who began his teaching career in

August 2004.  Plaintiff's First Amended Complaint ("Complaint") ¶ 3 (docket entry

15).  In August 2007, Scott began working at Truman Middle School ("Truman") in

the Grand Prairie ISD. *Id.* In May 2010, at the end of his third year at Truman, the district notified Scott that he was being transferred to Arnold Middle School ("Arnold"). See *id.* ¶¶ 3-4. Scott's commute to Arnold is an additional 25 to 30 minutes longer than his commute to Truman. See *id*. ¶ 4.

Within a few days of the notification, Scott informed his then principal, Charles Lester, that his wife had recently been diagnosed with cancer and that he needed to remain at a campus close to his residence so that he could attend to his wife's medical needs. *Id.* Also within a few days of the notification, Scott met with Norm Whittaker ("Whittaker"), the Grand Prairie ISD Human Resource Director for Secondary Education. *Id.* ¶ 5. Scott told Whittaker of his need to remain at a campus closer to his home and of his need to take a leave of absence pursuant to the Family and Medical Leave Act of 1993 ("FMLA"). *Id.* Scott avers that Whittaker told him if a position opened up at Truman, or at a campus closer to Scott's home, Scott would be moved to that campus. *Id.* ¶ 6.

In June 2010, Scott learned there was an opening for an 8th grade science teacher at Truman, and on June 17, he emailed Whittaker to inquire about the status of his request to return to Truman. *Id.* ¶ 7. According to Scott, Whittaker said he had not yet looked into Scott's transfer request. *Id.* On July 11, Scott again emailed Whittaker to follow up on his initial inquiry. *Id.* ¶ 8.

In addition to emailing Whittaker, Scott also contacted Molinar, Truman's new principal. *Id.* Scott forwarded his résumé to Molinar, and on or about July 19, Scott spoke with Molinar about the 8th grade science position. *Id.* ¶ 9. According to Scott, Molinar told him that he would have to interview for the position, which Scott did on July 21.[1] *Id.* ¶ 10. Scott alleges that during the interview he informed Molinar of his wife's cancer diagnosis, and his need to take FMLA leave and to remain at a school campus closer to home. *Id.*

On August 6, 2010,[2] Scott learned that he did not get the 8th grade science position at Truman and that the position went to Sara Dean ("Dean"), a female with no public school teaching experience who was on a probationary teaching certificate. *Id.* ¶¶ 11, 15. During this time, and unbeknownst to Scott, a 6th grade science position also opened up at Truman. *Id*. ¶¶ 12, 13. This position went to Brittany Griffith ("Griffith"), another female with no public school teaching experience who was on a probationary teaching certificate. *Id.* ¶ 16. Scott alleges that neither Molinar nor Grand Prairie ISD (through Whittaker, its agent) informed Scott of the

---

[1]     The plaintiff's complaint lists the date as July 21, 2011. However, the plaintiff has informed the court that the intended date was July 21, 2010.

[2]     The plaintiff's complaint lists the date as August 6, 2011. However, the plaintiff has informed the court that the intended date was August 6, 2010.

6th grade position at any time.  *Id.* ¶ 14.  Scott further alleges that the stated reason

he was not hired, namely that he lacked a "wow" factor, was pretextual.  *Id.* ¶ 17A.[3]

In addition to a three-fold increase in his commute, Scott alleges that the

transfer to Arnold also resulted in a loss of campus based seniority and job security,

together with exposure to "a more violent school environment."  *Id.* ¶ 17B.

Furthermore, Scott alleges, the Arnold campus is less prestigious and requires more

"burdensome paperwork" than Truman does.  *Id.* ¶ 18.

In September 2010, Scott filed a formal grievance with Grand Prairie ISD.  *Id.*

¶ 31.  On October 29, 2010, Scott dually filed a charge of discrimination with the

Equal Employment Opportunity Commission ("EEOC") and with the civil rights

division of the Texas Workforce Commission.  *Id*.  On May 10, 2011, the EEOC

issued Scott a right to sue letter on his discrimination charge.  *Id*.

On August 8, 2011, Scott filed this suit against the defendants.  *Id*. ¶ 21.  One

week later, during the district's convocation, the superintendent of schools, Dr. Susan

Hull, "made a comment concerning the Channel 11 investigative news story, in which

[Scott] participated."  *Id*. ¶ 23.  Scott alleges that this comment was in retaliation for

his exercise of rights under state and federal law and that it "was designed to

embarrass and intimidate [him] in front of his peers and intimidate him from taking

further action in pursuit of his rights."  See *id*. ¶¶ 22, 23.  Furthermore, Scott alleges

---

[3]      The plaintiff's complaint includes two paragraph 17s.  The court will
refer to the first paragraph 17 as 17A, and the second paragraph 17 as 17B.

numerous other actions taken by the district or its agents that were retaliation for the exercise of Scott's legal rights.  See *id*. ¶¶ 22-30.  These actions include (1) removing certain advanced classes, known as the GT/PREAP and Plato classes, from Scott's schedule and assigning them to less qualified instructors, *id.* ¶¶ 25-26, 28, (2) giving Scott his first formal write-up for "failing to sign up for a committee," *id.* ¶ 27, (3) admonishing Scott and threatening his entire career and livelihood, *id*. ¶ 24, and (4) pulling Scott out of class to hand-deliver a grievance response, an action which allegedly made Scott fear for his job, *id*. ¶ 29.

In his complaint, Scott brings three claims for relief against the defendants: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1972 ("Title IX"), and the Texas Commission on Human Rights Act ("TCHRA"); (2) discrimination or retaliation in violation of the FMLA; and (3) retaliation in violation of Title VII and the TCHRA.  See *id.* at ¶¶ 19-20, 30.

## B.  Motion to Dismiss Under 12(b)(6)

The defendants have filed a motion to dismiss all of Scott's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Defendants Grand Prairie Independent School District and Ruben Molinar's Second Amended Motion to Dismiss ("Motion") at ¶ 5 (docket entry 16).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its

face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009). The court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an

entitlement of relief." *Id*.  The plausibility principle does not convert the Rule 8(a)(2)

notice pleading to a "probability requirement," but "a sheer possibility that a

defendant has acted unlawfully" will not defeat a motion to dismiss.  *Id*. at 1949.

The plaintiff must "plead[] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that

the pleader is entitled to relief.'" *Id*. at 1950 (*quoting* FED. R. CIV. P. 8(a)(2)).  The

court, drawing on its judicial experience and common sense, must undertake the

"context-specific task" of determining whether the plaintiff's allegations "nudge" its

claims against the defendants "across the line from conceivable to plausible."  See *id*.

at 1950, 1952.

## II. ANALYSIS

### A. The Plaintiff's Title IX Claim

Title IX provides that "no person in the United States shall, on the basis of sex,

be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance[.]"  20 U.S.C. § 1681(a).  However, "Title IX does not afford a private

right of action for employment discrimination on the basis of sex in federally funded

educational institutions." *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247

(5th Cir. 1997).  Rather, Title VII "provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." *Id*.

In this case, Scott has brought a sex discrimination employment claim against Grand Prairie ISD under Title IX.  Complaint ¶ 19.  Because there is no such right of action under Title IX, this claim must be dismissed.  The defendants' motion to dismiss this claim is granted.

B.  Discrimination Claims under Title VII and the TCHRA

The plaintiff has brought claims for gender employment discrimination against Grand Prairie ISD under Title VII and the TCHRA.[4]  Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may establish a *prima facie* case of discrimination under Title VII "by showing that []he 1) is a member of a protected class; 2) was qualified for [his] position; 3) was subjected to an adverse employment action; and 4) was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably." *Septimus v. University of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

---

[4]     The law governing claims under Title VII and the TCHRA is identical. See *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999).

To establish a *prima facie* case of discrimination under Title VII, the plaintiff must show that he suffered an adverse employment action.  *Id*.  In the discrimination context, "[o]nly ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating," satisfy the adverse employment action element of a plaintiff's *prima facie* case.  *McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007) ("[O]ur precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII discrimination claims[.]").

In this case, Scott's claims for discriminatory treatment fail, because the actions of which Scott complains do not constitute ultimate employment decisions. First, Scott asserts that he suffered an adverse employment action when the district transferred him from Truman to Arnold and then failed to transfer him back. Plaintiff's Brief in Support of Plaintiff's Response to Defendants' Second Amended Motion to Dismiss ("Response Brief") at 3 (docket entry 20).  Scott has not pleaded sufficient facts to sustain an allegation that his initial transfer from Truman to Arnold was a discriminatory action taken against him because of his gender or made in retaliation for engaging in any protected activity.  *See generally* Complaint.  Thus, to the extent that his claims rely on his initial transfer, his claims fail.

Moreover, the decision not to transfer him back to Truman does not constitute an adverse employment action.  The Fifth Circuit has held that the denial of a request

for a purely lateral transfer does not constitute an ultimate employment action where the job title, benefits, duties, and responsibilities are the same. See *Burger v. Central Apartment Management, Inc.*, 168 F.3d 875, 879 (5th Cir. 1999). The court held that "[r]efusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision," as it "is not akin to acts 'such as hiring, granting leave, discharging, promoting, and compensating." *Id.* (quoting *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995) (per curiam)). Although Scott may have interviewed for the position at Truman, the result of that interview would not have altered his status as an employee already hired by the district.

Scott argues that the denial of the transfer to Truman resulted in an adverse employment action because of the loss of his campus-based seniority, a threefold increase in his commuting time, a more violent work environment, lost job security, less room to advance, lost prestige, and more burdensome paperwork requirements. Complaint ¶ 17-18. Many of these factors relate back to the fact that Arnold is an Academically Unacceptable Title I campus. See *id.* ¶ 18. However, each of these conditions arose as a result of Scott's initial transfer to Arnold. And as explained above, Scott's complaint does not show that his initial transfer to Arnold was a result of discrimination. Furthermore, ample case law supports the proposition that these factors, irrespective of the time they arose, are not sufficiently adverse to constitute an ultimate employment decision. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th

Cir. 2004) (stating that an adverse employment action is not established "where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position"); *Carter v. Luminant Power Services Company*, No. 3:10-CV-1486-L, 2011 WL 6090700, at *8 (N.D. Tex. Dec. 6, 2011) (Lindsay, J.) (stating that "the possibility of discharge does not equal being discharged, and such action is not an ultimate employment decision"); *Gray v. Sears, Roebuck & Company, Inc.*, 131 F. Supp. 2d 895, 904 (S.D. Tex. 2001) (stating that "an assignment to a position which has equal compensation, terms, conditions, and privileges of employment -- but which requires a longer commute -- does not constitute an adverse employment action").

## C. Retaliation Claims under Title VII and the TCHRA

The plaintiff has also brought retaliation claims against Grand Prairie ISD under Title VII and the TCHRA.  Under Title VII, it is unlawful for an employer to discriminate against his employee because the employee has opposed an unlawful employment practice or brought a charge of an unlawful employment practice against his employer.  42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case for retaliation, a plaintiff must show:  "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed

between the protected activity and the adverse action." See *Banks v. East Baton Rouge Parish School Board*, 320 F.3d 570, 575 (5th Cir.), *cert. denied*, 540 U.S. 817 (2003).

Prior to 2006, the Fifth Circuit employed the "ultimate employment action" standard for adverse employment actions for both discrimination and retaliation claims. See *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53, 60 (2006). However, in *Burlington Northern*, the Supreme Court established a different interpretation of adverse employment actions in the Title VII retaliation context. In that case, "[t]he Supreme Court held that an employee suffers an 'adverse employment action' for purposes of Title VII 'if a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *McArdle v. Dell Products, L.P.*, 293 Fed. App'x. 331, 337 (5th Cir. 2008).

In determining whether an action is materially adverse, the court must separate "significant from trivial harms." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484-85 (5th Cir. 2008) (citing *Burlington Northern*, 548 U.S. at 68). The standard is an objective one. *Id.* Thus, determining "[w]hether a reasonable employee would view the challenged action as materially adverse involves questions of fact generally left for a jury to decide." *McArdle*, 293 Fed. App'x at 337.

In this case, Scott has pleaded numerous post-suit events that were allegedly done in retaliation for his engaging in protected activity.  *See* Complaint ¶¶ 23-29. These include (1) a comment made by the Grand Prairie superintendent at a district-wide convocation, (2) a general admonishment and threat to his career and livelihood made by the Grand Prairie ISD administration, (3) being pulled out of class to receive a hand-delivered grievance response, (4) a formal write up for failing to sign up for a committee, and (5) the assignment of 7th and 8th grade GT/PREAP and "Plato" classes to other teachers.  *Id*.  While most of these actions do not constitute adverse employment actions, the reassignment of the advanced classes does.

In his complaint, Scott alleges that during the August 15, 2011 Grand Prairie ISD convocation, the superintendent, Dr. Susan Hull, made a comment concerning a Channel 11 investigative news story, in which the plaintiff participated.  Complaint ¶ 23.  The complaint alleges that "[t]his comment was designed to embarrass and intimidate Plaintiff in front of his peers and intimidate him from taking further action in pursuit of his rights."  *Id.*  This comment does not qualify as an adverse employment action.  First, the plaintiff does not explain anything about the news story, the comment, or why it was designed to embarrass or intimidate.  Even if the court were to construe the allegations in the complaint strongly for the plaintiff, it is

clear that the comment would only qualify as a "trivial," instead of a "significant" harm.

Likewise, Scott pleads a series of incidents that can only be characterized as "trivial." First, Scott alleges that on August 19, 2011, the district administration "admonished" the plaintiff and "threatened his entire career and livelihood." Complaint ¶ 24. Second, Scott argues that he was retaliated against when he received a formal write-up for failing to sign up for a committee. *Id*. ¶ 27. Third, Scott maintains that he was retaliated against when he was hand-delivered a response to a grievance he had previously filed against the district. Complaint ¶¶ 27, 29. These do not constitute adverse employment actions.

Finally, Scott asserts that he was retaliated against when he was deprived of teaching the 7th and 8th grade GT/PREAP and Plato classes which he was qualified to teach. Complaint ¶¶ 25-26, 28. First, Scott alleges that the district, "by and through its agent Anika Perkins," assigned 8th grade GT/PREAP classes to Kelly Strey ("Strey") instead of himself. Scott argues that Strey "had not completed the 30 hours of GT Certification Training required to be the teacher of record for GT/PREAP classes[,]" and that she had no experience in teaching these classes. *Id*. ¶ 25. Scott also asserts that the district took away his ability to teach 7th grade GT/PREAP classes, even though he had spend $2000 to obtain additional GT training. *Id*. ¶ 26. Finally, Scott alleges that he was told he was going to receive certain "Plato" students

for Fifth Period, although these eventually were given to a Margaret Daniels

("Daniels").   Scott claims that he should have received the Plato students over

Daniels.  He explains that Daniels was a new employee to the district on a

"probationary contract," had fewer years of experience than he did, and that while he

had a teaching certificate that specialized in Middle School Science, Daniels only had

a general teaching certificate.  The court concludes it is likely that a reasonable

employee in the plaintiff's position would have found the removal of the GT/PREAP

and Plato classes to be materially adverse.  See *McArdle*, 293 Fed. App'x. at 337.

Moreover, at this stage of the litigation, it is plausible to infer from the complaint

that there is a causal relationship between the plaintiff's suit and the district's actions.

As a result, the plaintiff's claims for retaliation under Title VII cannot be dismissed

for failure to state a claim.

### D.  Claims under the FMLA

Finally, the plaintiff has brought a claim for "FMLA discrimination and/or

retaliation."  Complaint ¶ 20.  In particular, the plaintiff claims that the defendants

discriminated and/or retaliated against him when "they failed to select him for either

Science position opening at Truman Middle School because of his requested need to

take FMLA leave to care for his wife who was diagnosed with cancer."  *Id.*

"The FMLA has two distinct sets of provisions, which together seek to meet

the needs of families and employees and to accommodate the legitimate interests of

- 15 -

employers." *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (internal quotations omitted).  The first set of provisions are "prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances." *Id*.  The second set of provisions are "proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights." *Id*.

The proscriptive provisions of the FMLA are set forth in 29 U.S.C. § 2615. First, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA.  *Id*. § 2615(a)(1).  Second, "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA.  *Id*. § 2615(a)(2).  Finally, Section 2615(b) prohibits persons from interfering with proceedings or inquiries related to the FMLA.

In this case, the plaintiff's complaint can be construed as pleading claims against the defendants under Section 2615(a)(2).  First, the plaintiff does not allege that the defendants' actions interfered with his FMLA rights under Section 2615(a)(1).  Instead he alleges that the defendants' actions were discriminatory or retaliatory in refusing to transfer him back to Truman.  Complaint ¶ 20.  Second, because the plaintiff does not allege any proceeding or inquiry related to the FMLA, he has no claim under Section 2615(b).

To make out a *prima facie* case under Section 2615(a)(2), the plaintiff must show that (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and (3) either (a) he was treated less favorably than an employee who had not requested leave under the FMLA, or (b) the adverse decision was made because he took FMLA leave.  See *Hunt v. Rapides Healthcare Systems, LLC*, 277 F.3d 757, 768 (5th Cir. 2001).

In this case, the plaintiff pleaded enough facts to make out a claim of discrimination under Section 2615(a)(2).  First, Scott is a protected employee under the FMLA.  *See* 29 U.S.C. § 2611(2) (defining "eligible employee").  Second, Scott successfully pleaded an adverse employment action.  The Fifth Circuit has held that the phrase adverse employment action means the same thing in both the Title VII retaliation context and the Section 2615(a)(2) context.  See *McArdle*, 293 Fed. Appx. at 337.  Scott alleges that the failure to transfer resulted in a loss of his campus-based seniority, a threefold increase in his commuting time, a more violent work environment, lost job security, less room to advance, lost prestige, and more burdensome paperwork requirements.  Because "a reasonable employee would have found the challenged action materially adverse," *id*, the defendants' alleged failure to transfer him back to Truman constitutes an adverse employment decision.  Third, by alleging that Dean and Griffith were selected over him for the positions at Truman,

Scott has pleaded that he was treated less favorably than employees who had not requested FMLA leave.

### III.  CONCLUSION

For the reasons stated above, the defendants' motion to dismiss the plaintiff's Title IX claims and Title VII and TCHRA discrimination claims is **GRANTED**.  The defendants' motion to dismiss the plaintiff's Title VII and TCHRA retaliation claims and FMLA Section 2615(a)(2) claims is **DENIED**.

**SO ORDERED**.

April 19, 2012.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**